## IN THE COURT OF APPEALS OF IOWA

No. 19-0697
Filed February 19, 2020

**VALERIE GOLDSTON,**
Plaintiff-Appellee,

**vs.**

**ZEBEDIAH GOLDSTON,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark D. Cleve, Judge.

Zebediah Goldston appeals a final domestic-abuse protective order.
**AFFIRMED.**

Robert S. Gallagher of Gallagher, Millage & Gallagher, P.L.C., Bettendorf, for appellant.

Paul L. Macek of Hopkins & Huebner, P.C., Davenport, for appellee.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**BOWER, Chief Judge.**

Zebediah Goldston appeals a final domestic-abuse protective order issued pursuant to Iowa Code chapter 236 (2018). Because we find Valerie Goldston sufficiently established an incident of domestic abuse assault, we affirm.

## I. Background Facts & Proceedings

Zebediah and Valerie Goldston are a separated couple. The couple married in 2012 and moved to Iowa in 2017. Zebediah and Valerie have three minor children born in 2013, 2016, and 2019.[1]

On the morning of November 8, 2018, Zebediah and Valerie—who was pregnant—had a confrontation. Valerie testified Zebediah was "in a rage" and blocked her within their bedroom, then later blocked her in the children's room, and told her she was not leaving the home. While Valerie sat with the children on the floor of their bedroom, she called the police. According to the responding officer's report, "Valerie . . . advised no assault had occurred though she stated Zebediah has anger issues and was out of control." At the protective-order hearing, Valerie testified her "understanding of an assault was a physical hit or punch." Valerie stated Zebediah's aggressive behavior—including punching doors and slamming things in front of her—frightened her and the children. Zebediah framed the confrontation as a series of arguments between himself and Valerie.

Zebediah left after the police arrived, but returned a short time later to pick up some personal belongings. The parties came in physical contact with one another as each reached for Valerie's rings on the countertop. Valerie later

---

[1] The couple's third child was born after the protective order was granted.

described the contact as "offensive" and "insulting." Zebediah said Valerie tried to force his hand open and stated that he did not initiate any physical contact.

Valerie got ready for a doctor appointment, and she and her child got into her car. As Valerie was backing out of the garage, Zebediah stood by the garage door yelling at her. The side mirror struck Zebediah as she left. Zebediah then called the police claiming Valerie tried to run him over and assaulted him by earlier grabbing his hand.

On November 13, Valerie filed a petition for relief from domestic abuse. The court granted Valerie a temporary protective order.

On April 17, 2019, the court held a hearing to determine whether to grant Valerie's application for a permanent protective order.[2] At the hearing, Zebediah said he is "known to get angry" but denied having anger issues.

On April 18, the court granted Valerie a one-year protective order, finding by a preponderance of evidence that Zebediah "committed a domestic abuse assault against" Valerie and he "represents a credible threat to the physical safety" of Valerie. Zebediah appeals.

## II. Standard of Review

Chapter 236 proceedings are heard in equity.[3] *See Conklin v. Conklin*, 586 N.W.2d 703, 705 (Iowa 1998). We review equity cases de novo. Iowa R. App.

---

[2] Zebediah had filed a petition to dissolve the marriage. The permanent protective order hearing was combined with a hearing on temporary matters in the dissolution case.

[3] The district court ruled on objections during the hearing but expressly noted it would allow the parties to make a record. The court did not exclude evidence from the record through its rulings. The trial was thus conducted as an equitable proceeding. *See Smith v. Janssen*, No. 16-0018, 2017 WL 1086206, at *1 (Iowa Ct. App. Mar. 22, 2017).

P. 6.907. Under de novo review, "we rely on the trial court's assessment of the witnesses' credibility." *Conklin*, 586 N.W.2d at 706. A plaintiff must prove an allegation of domestic abuse by a preponderance of the evidence. Iowa Code § 236.4(1).

### III. Analysis

Zebediah claims Valerie failed to sufficiently prove an incident of domestic abuse to warrant the protective order and the trial court erred in admitting evidence from a journal predating the parties' marriage and private medical records obtained without his consent.

**A. Preponderance of evidence.** Zebediah contends "[t]he court did not make a determination that a specific assault took place in this case." He further claims he did not have notice of the allegation of assault from the touch, which occurred when both parties reached for Valerie's rings.

"[T]he domestic abuse chapter is meant to be protective rather than punitive in nature . . . and is given a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it." *Wilker v. Wilker*, 630 N.W.2d 590, 596 (Iowa 2001) (citations omitted) (internal quotation marks omitted). "Domestic abuse" occurs when (1) the defendant commits an assault as defined in section 708.1 against the plaintiff; and (2) the defendant and plaintiff are in one of the relationships identified in section 236.2. Iowa Code § 236.2(2); *see also id.* § 236.5 (providing for disposition "[u]pon a finding that the defendant has engaged in domestic abuse"). "[A] finding of assault is a prerequisite to any relief afforded under chapter 236." *Huntley v. Bacon*, No. 16-0044, 2016 WL 3271874, at *3 (Iowa Ct. App. June 15, 2016).

> A person commits an assault when, without justification, the person does any of the following:
> (a) Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> (b) Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

Iowa Code § 708.1(2)(a)–(b).

The evidence presented by both sides reveals they had a volatile relationship. The district court had the opportunity to consider the testimony of both Zebediah and Valerie and evaluate their credibility. Sworn affidavits of third-parties contradicted Zebediah's claims about Valerie's temperament. Valerie also introduced photographs of damage to the Goldstons' home, which Zebediah admitted he caused when he was angry. Both parties' testimony shows they argued the morning of November 8 and Zebediah exhibits aggressive behaviors when angry. The district court's order impliedly found Valerie was the more credible witness, and her testimony described behaviors which would reasonably put her in fear of immediate physical contact that would "be painful, injurious, insulting, or offensive." *See id.* We conclude Valerie established a domestic-abuse assault by a preponderance of evidence.

As to Zebediah's notice claim, a petition for relief from domestic abuse need only state "the nature of the alleged abuse" to provide sufficient notice. *See* Iowa Code § 236.3(1)(e); *see also Knight v. Knight*, 525 N.W.2d 841, 843 (Iowa 1994) ("Section 236.3[(1)(e)] requires a petitioner to state the *nature* of the alleged abuse. The term 'nature' is defined as 'a kind or class usually distinguished by fundamental or essential characteristics.'" (citation omitted)). If the plaintiff has

provided notice of the nature of the abuse, it does not offend due process if the plaintiff's case is "based, in part, on conduct and events not stated in the pleading." *Wilker*, 630 N.W.2d at 596. Valerie described many aggressive behaviors the morning of November 8; consideration of the ring incident—which Zebediah reported to the police as Valerie assaulting him—should not have been a surprise.

**B. Evidence admission.** Zebediah challenges the court's admission of his 2008 journal from a treatment program and evidence relating to his medication prescriptions. He requests the evidence and related testimony be stricken from the record.

When tried in equity, "the court d[oes] not need to rule on objections, but c[an] hear all evidence subject to objections." *Wilker*, 630 N.W.2d at 597. Nothing indicates the district court relied on either the journal or Zebediah's medication prescriptions in issuing the protective order. We did not consider the information in our determination, so "we need not pass judgment on their admissibility." *See id.* at 598. We affirm.

**AFFIRMED.**